FRONTIER INSURANCE COMPANY, a foreign corporation, Appellant,

v.

FRONTLINE PROCESSING CORPORATION, et al., Respondents,

Ronald Reavis, Defendant.

No. A09–2201.

Court of Appeals of Minnesota.

Oct. 5, 2010.

Clifford F. Altekruse, pro hac vice, Smith Currie & Hancock, LLP, Atlanta, GA; and David B. Olsen, Henson & Efron, P.A., Minneapolis, MN, for appellant.

Eric J. Braaten, Nicklaus, Braaten & Hollenhorst PLLC, Chaska, MN; and Jeffery J. Oven, pro hac vice, Crowley Fleck P.L.L.P., Billings, MT, for respondents.

Considered and decided by CONNOLLY, Presiding Judge; KALITOWSKI, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.[*]

Appellant challenges the dismissal of its claims as a discovery sanction, arguing that the district court abused its discretion by dismissing the claims without warning and by dismissing as to all respondents. Appellant also argues that the district court abused its discretion in awarding fees and costs to respondents. We affirm.

## FACTS

On July 14, 2004, appellant Frontier Insurance Company filed a complaint against respondents Frontline Processing Corporation, LMA Underwriting Agency, and Christopher L. Kittler, individually, as owner of Frontline and LMA.[1] The claims arose out of a contractual relationship between the parties commenced in 1999, and respondents' alleged failure to properly underwrite insurance bonds and alleged failure to pay premiums on bonds. The initial discovery deadline was April 30,

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Defendant Ronald Reavis was dismissed from the action without prejudice following a motion by Frontier. Reavis is not a party to this appeal.

2005. On September 20, 2006, following several discovery disputes and multiple amended scheduling orders, the district court appointed a special master to adjudicate all discovery disputes.

A telephonic hearing was held before the special master on October 31, 2006, at which time the special master ordered respondents to comply with Frontier's discovery requests. At a hearing on November 15, 2006, the special master ruled on a number of other discovery issues, including Frontline's motion to compel discovery. A transcript of this hearing was prepared in lieu of a written order and the special master ruled, from the bench, that many of Frontier's discovery responses required supplementation. In addressing specific discovery requests by respondents, the special master admonished Frontier as follows:

> After two or three years of litigation, somebody should have been able to put some specificity to this. Again I want to reiterate the fact that Frontier is the Plaintiff, and if it's going to pursue a massive litigation like this and put the Defendants to massive expense, it has an obligation to come forward and do its due diligence to provide these numbers.

On September 25, 2007, the special master held a telephonic conference to address additional discovery issues. The special master later wrote that "[d]uring that conference call, [Frontier] acknowledged that it had not yet provided the discovery ordered almost a year prior, but assured the Special Master that it would be able to respond by October 26, 2007." In an order dated October 3, 2007, the special master ordered that all written discovery "be completed and all written discovery answers fully supplemented by Friday, October 26, 2007." Two days before the October 26, 2007 discovery deadline, Frontier requested another extension.

On November 2, 2007, the special master held a hearing on Frontier's motion to amend the scheduling order, permit additional discovery, and compel certain discovery. At this hearing the special master "agreed with [respondents] that [Frontier] had not acted within a reasonable time frame ... but permitted [Frontier] additional time to examine the document repository, complete its discovery and provide [respondents] with its estimate of damages." The discovery deadline was extended to December 10, 2007, and was again extended to December 20, 2007. The order extending discovery to December 20, 2007, stated:

> Without a doubt, [Frontier] failed to meet the discovery deadlines set forth in the scheduling order and those granted by the Special Master following the November 2nd hearing. As the Special Master explained at that hearing, there is little excuse for plaintiff's failure to conduct discovery in the year following the release of the document index. Certainly, under Minn. R. Civ. P. 37.02(b), sanctions are available against parties who, like plaintiff, fail to provide timely discovery.

The special master declined to grant sanctions against Frontier for the failure to meet the deadline because, although Frontier's "failure to conduct discovery was, in the Special Master's opinion, part of a pattern of delay and inattention," the special master noted that Frontier had not been provided "a clear warning that would put counsel on notice that a failure to comply might result in the dismissal of the complaint or an exclusion of claims." This order was dated on December 26, 2007, six days after Frontier submitted its supplemental discovery responses.

Frontline filed a February 2008 motion for sanctions, alleging that Frontier's December 20, 2007 supplemental discovery

responses were inadequate. The motion sought dismissal of Frontier's claims or, in the alternative, an order prohibiting Frontier from advancing any claims or theories not supported by discovery responses as of December 26. The special master held a hearing on March 11, 2008, on the motion for sanctions. In an April 2008 order, the special master granted dismissal as a sanction for Frontier's discovery violation noting that, although Frontier "purported to provide the requested discovery on December 26, 2007," the responses were "seriously deficient."

The April 2008 order details several examples of deficient discovery responses. The special master found inadequate Frontier's response to requests for production seeking travel records and financial information relative to Frontier's relationship with Frontline. In regard to the request for financial information, the special master noted that "the response fails to provide any relevant information" and was "woefully inadequate."

In Interrogatory 8, Frontier was asked to detail the total amount of premiums Frontier believed that it was owed by Frontline. Frontier responded by giving a dollar amount but stated that additional premiums may be due to other merchants and that "[a]s discovery in this case is still open and ongoing, Frontier reserves the right to supplement this information as necessary and/or appropriate." The special master concluded that this response was inadequate because Frontier had been provided with multiple extensions of the discovery deadline and had "more than adequate opportunity to discover the existence of its bonds" and to "examine Frontline's documents in situs with the assistance of an index prepared by Frontline," and had available "the individual who created the index." The special master stated "by this time in the case, defendants have every right to know the exact extent for the claims against them."

Interrogatory 15 requested that Frontier provide, by merchant name, when and on what bond or bonds the premium was owed. Frontier responded by listing the merchants and then stating "Defendants were to calculate premium payments due Frontier on a monthly basis, based on each merchants' prior monthly volume." The special master stated that Frontier's wholly inadequate response, in which Frontier claims that it "provided exactly the response requested, is based on a tortured, hypertechnical reading of the interrogatory."

In response to Interrogatories 9 through 14, seeking detail on what was wrong or improper with Frontline's underwriting of certain bonds, the special master concluded that "Frontier's responses merely restated the allegations contained in its complaint.... At the very least, Frontline was entitled to know the reasons the merchants were considered to be high risk." Similarly, Interrogatories 16 through 18 sought information about bond-payment claims submitted by respondents that were not paid. The special master found Frontier's response that it would make the documents available pursuant to Minn. R. Civ. P. 33.03 inadequate because the response provided no meaningful information and the special master "seriously questions whether a party satisfies the Rules of Civil Procedure, by offering a records inspection that is unable to be completed by the close of written discovery."

The special master determined that sanctions were appropriate under Minn. R. Civ. P. 37.02(b). The special master considered sanctions less severe than dismissal but concluded that dismissal was appropriate based on (1) the clarity of the discovery deadlines; (2) the warning of dismissal contained in the December 26,

2007 discovery deadline extension; (3) the repeated failure to provide adequate discovery as "part of a lengthy pattern of non-compliance by Frontier"; and (4) the lack of any justification for Frontier's failure to respond. Frontier brought a motion for clarification and reconsideration. The special master clarified that Frontier's case was dismissed in its entirety as to all defendants and affirmed that dismissal was the appropriate sanction. The special master noted that the decision was not based on a deficiency in any one individual interrogatory, "but on the entirety of defendants' [unsuccessful] efforts to obtain discovery from plaintiff."

Frontier objected to the special master's August 2008 order. The district court affirmed and adopted the special master's order in its entirety. In affirming the dismissal of Frontier's claims, the district court stated:

> Frontier's claims have been pending against Frontline and Chris Kittler for four years. Despite the seriousness of these allegations, despite numerous discovery requests, and despite multiple court orders and discovery deadlines, Frontier has not, to this day, disclosed in any detail what is wrong with the underwriting, how much premium it believes was owed, or how much is owed on any particular bond. Frontier has done nothing but repeatedly restate the unsupported allegations in its Complaint and provided no evidence to support its claims.

Frontline sought attorney fees and costs, and Frontier moved to stay the claim in light of the fact that Frontier was in receivership proceedings in New York. The special master denied Frontier's motion to stay, and the district court again affirmed. In July 2009 the special master ordered that respondents were entitled to an award of all fees and costs incurred

from November 3, 2007 to June 1, 2009. Based on the information submitted by the parties, the special master awarded fees and costs in the amount of $177,419.14. Frontier objected to the order. The district court denied Frontier's request to modify the award for fees and entered judgment of dismissal. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion by dismissing Frontier's claims as to all respondents as a discovery sanction?

II. Did the district court err by dismissing Frontier's claims against all respondents?

III. Did the district court abuse its discretion in awarding fees and costs?

## ANALYSIS

### I.

Frontier first challenges the dismissal of its claims against all respondents as a discovery sanction, without warning. The district court may issue orders compelling discovery and imposing sanctions. Minn. R. Civ. P. 37.01, .02. Sanctions may include dismissal of all or part of a claim if a party willfully and persistently fails to comply with a discovery order without justification or excuse. Minn. R. Civ. P. 37.02(b)(3); *Breza v. Schmitz*, 311 Minn. 236, 237, 248 N.W.2d 921, 922 (1976). When a party "has willfully and without justification or excuse refused to comply with discovery orders" that party has "forfeited [the] right to a trial of [the] case on the merits." *Breza*, 311 Minn. at 237, 248 N.W.2d at 922 (quotations omitted). The district court's discovery-related orders will not be disturbed absent an abuse of discretion. *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916, 921 (Minn.1990). But dismissal with prejudice

is the most severe sanction available and should be granted in only exceptional circumstances. *Firoved v. Gen. Motors Corp.*, 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967).

Appellate courts have examined the following factors in determining whether a district court has abused its discretion in imposing discovery sanctions: (1) if the court set a date certain by which compliance was required, (2) if the court gave a warning of potential sanctions for noncompliance, (3) if the failure to cooperate with discovery was an isolated event or part of a pattern, (4) if the failure to comply was willful or without justification, and (5) if the moving party has demonstrated prejudice. *See Breza*, 311 Minn. at 237, 248 N.W.2d at 922 (willful or without justification); *Beal v. Reinertson*, 298 Minn. 542, 544, 215 N.W.2d 57, 58 (1974) (specific date for discovery); *Jadwin v. City of Dayton*, 379 N.W.2d 194, 197 (Minn.App.1985) (moving party must demonstrate prejudice); *Sudheimer v. Sudheimer*, 372 N.W.2d 792, 795 (Minn.App. 1985) (warning about possible sanctions); *Williams v. Grand Lodge of Freemasonry AF & AM*, 355 N.W.2d 477, 480 (Minn. App.1984) (isolated event or part of a pattern), *review denied* (Minn. Dec. 20, 1984).

### a. Prior warning

■ Frontier argues that the district court abused its discretion by dismissing Frontier's claims without prior warning. "The existence of a clear warning by the trial court that dismissal or a similar sanction would automatically result if the party did not comply with a discovery deadline has been a significant factor in determining on appeal whether such a sanction was appropriate." *Sudheimer*, 372 N.W.2d at 795. Frontier argues that the special master's warning on December 26, 2007, was effectively no warning at all because it was given after Frontier had submitted its final supplemental discovery on December 20, 2007. Respondents argue that the lack of a prior explicit warning is not dispositive because Frontier had been given clear notice on previous occasions that its conduct was in violation of discovery orders when Frontier failed to meet multiple discovery deadlines and comply with specific orders for production. We agree. Further, respondents argue that following the December 26, 2007 order, Frontier could have supplemented its discovery in order to correct the deficiencies. We agree.

The record shows that there were multiple deadlines that Frontier failed to meet. While the only explicit warning of sanctions for failure to meet deadlines and discovery requirements came in the December 26, 2007 order, the special master had referred to Frontier's duty to comply with the rules of civil procedure and supplement its inadequate discovery responses in the November 15, 2006 and November 2, 2007 hearings. After discussing the required supplemental discovery in the November 2, 2007 hearing, the special master stated that the "last possible date" that the parties could complete the written discovery and supplementation would be December 20, 2007. Despite the clear direction to Frontier to supplement its discovery requests over a year after the special master ordered supplementation, the special master concluded that the supplemental discovery submitted in December 2007 was woefully inadequate.

Based on the pattern of untimely discovery and the inadequate supplementation, the special master concluded that sanctions were called for. Despite the lack of an explicit statement by the special master prior to December 26, 2007, that failure to complete discovery would result in the dismissal of Frontier's claims, we conclude that the special master's detailed review of

the inadequate discovery in the November 2, 2007 hearing, the firm December 20, 2007 discovery deadline, and the special master's admonition requiring Frontier to comply with the rules of civil procedure, provided a clear, albeit implicit, warning to Frontier of the need to comply with the rules of civil procedure or be subject to sanctions.

We note that, though the special master set a December 20, 2007 deadline for the close of discovery, Frontier was under a continuing obligation to supplement incomplete discovery responses even after the discovery deadline. *See* Minn. R. Civ. P. 26.05 ("A party is under a duty seasonably to amend a prior response to an interrogatory ... if the party learns that the response is in some material respect incomplete ... and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

Because Frontier had previously been given clear notice that its discovery responses were insufficient and of the importance of completing adequate supplementation in compliance with the discovery rules by the December 20, 2007 deadline and because Frontier failed to supplement its inadequate and incomplete responses following the December 20, 2007 deadline, even after the December 26, 2007 warning that sanctions could result from its failure to do so, we conclude that the district court did not abuse its discretion by sanctioning Frontier.

#### b. Significance of violations

■ Frontier argues that the district court abused its discretion by dismissing Frontier's claims in light of the record of discovery issues between the parties and the "minor" faults in Frontier's responses. We disagree. The special master found Frontier's discovery responses to be "seri-

ously deficient" and the violations willful. Our review of the record confirms the determinations of serious and willful discovery violations, and we observe that the special master appointed to oversee the discovery disputes was a retired judge with more than 20 years of trial court experience. Serving as special master, senior judge Steven Lange stated that, in his career he had "never seen such obfuscation" in the discovery process. In adopting the special master's dismissal order, the district court reviewed de novo the discovery record and concluded that Frontier's failure to comply with discovery and court orders was egregious and without justification. The record supports the district court's and special master's findings of a pattern of unreasonable delays and non-compliance with discovery requests. Further, while the record does support Frontier's argument that respondents had also failed to timely respond to certain discovery requests, the record indicates that respondents complied with the discovery requests following the October 2006 order compelling the discovery. Because the record supports the district court's conclusion that the discovery violations were "egregious" and not minor, because this court gives great deference to the district court's discovery orders, and because we review the record in the light most favorable to the order, we conclude that Frontier has not demonstrated that the district court abused its discretion in ruling that Frontier's discovery violations were willful and without justification and therefore appropriate for sanction.

#### c. Prejudice

■ In order to justify the harsh discovery sanction of dismissal the moving party must demonstrate that it suffered prejudice from the discovery violation. *Jadwin,* 379 N.W.2d at 197; *see also Sud-*

*heimer,* 372 N.W.2d at 794 ("[t]he primary factor to be considered in a dismissal is the prejudice to the parties."); *Housing & Redevelopment Auth. v. Kotlar,* 352 N.W.2d 497, 500 (Minn.App.1984) (district court did not abuse its discretion by dismissing the case where there was a failure to produce discovery and prejudice was shown). The moving party seeking dismissal generally has "the burden of showing particular prejudice of such a character that some substantial right or advantage will be lost or endangered." *Firoved,* 277 Minn. at 283–84, 152 N.W.2d at 368. Prejudice justifying dismissal "should not be presumed nor inferred from the mere fact of delay." *Id.*

Frontier argues that respondents did not show sufficient prejudice to justify such a harsh discovery sanction. We disagree. The district court adopted the special master's finding that Frontier's failure to respond to discovery requests prejudiced respondents by depriving them of the necessary information to form a defense. We agree with the district court that the inability of respondents to mount an effective defense due to Frontier's failure to comply with discovery and court orders is sufficient prejudice to warrant sanctions. In light of Frontier's persistent, willful failure to provide meaningful discovery after four years of litigation, prejudicing respondents by preventing them from preparing a defense, we conclude that the district court did not abuse its discretion by ordering dismissal as a discovery sanction.

## II.

Frontier argues the district court erred by dismissing its claims against all respondents. Under Minn. R. Civ. P. 37.02 a district court may dismiss an action or proceeding, or may render a judgment by default "against the disobedi-ent party." While this court has held that a moving party must show prejudice in order to justify a harsh discovery sanction, *Jadwin,* 379 N.W.2d at 197, the rule governing sanctions does not require any party to move for sanctions. *See* Minn. R. Civ. P. 37.02(b) (stating that a district court may dismiss an action if any party fails to obey a discovery order).

Frontier argues that the district court erred by dismissing Frontier's claims against all respondents when only Frontline demonstrated prejudice and only Frontline sought discovery sanctions. We disagree. Under rule 37.02(b) the focus of the analysis is whether the disobedient party's conduct was such that it would warrant such an extreme sanction. Here the special master examined the prejudice to the parties and determined that the prejudice to the co-defendants was identical to the prejudice to the party requesting sanctions. The special master stated:

> While it is true that LMA and Kittler served separate discovery upon Frontier, and have not filed any motions contending that the discovery provided to them was deficient, the Special Master is of the opinion that, in the context of this joint defense strategy, Frontier's discovery violations as to Frontline's discovery also precluded LMA and Kittler from forming an adequate defense to the complaint against them. Unless Frontier was able to establish that it provided the information requested by Frontline to LMA and Kittler, it cannot mitigate the prejudice of its discovery violations upon LMA and Kittler, because they are still left without the information Frontline was charged with providing.

Frontier argues that this is in direct conflict to the special master's earlier ruling that the respondents were separate parties and would be treated as separate parties

for discovery purposes. But the special master's decision to treat the respondents as separate entities for the purposes of discovery does not preclude a determination that the respondents had a common interest in the information to be derived from discovery and were therefore uniformly prejudiced by the discovery violations. Frontier's argument that because the special master treated respondents as separate entities for discovery, the special master is therefore precluded from concluding that respondents have a unified interest in the discovery information is without merit.

Because the district court determined that all respondents suffered prejudice as a result of Frontier's discovery violations and because Frontier has not demonstrated how the co-respondents suffered any less prejudice than Frontline, the district court did not abuse its discretion in dismissing Frontier's claims against all respondents under rule 37.02(b).

### III.

■■■■ Frontier challenges the awards of fees and costs. Under Minn. R. Civ. P. 37.02(b) "[t]he court shall require the party failing to obey the [discovery] order or the attorney advising that party or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." The district court's decision to order fees and costs as a sanction is within the district court's discretion. *Chi. Greatwestern Office Condo. Ass'n v. Brooks*, 427 N.W.2d 728, 730 (Minn.App.1988). The district court's findings regarding the reasonable expenses and value of an attorney's work is a question of fact that this court reviews for clear error. *Amerman v. Lakeland Dev. Corp.*, 295 Minn. 536, 537, 203 N.W.2d 400, 400–01 (1973).

Frontier argues that the district court abused its discretion in awarding $177,419.14 in fees and costs, and by including routine litigation expenses in the award. We disagree. The special master concluded that all fees listed between November 3, 2007, and June 1, 2009, were reasonable and necessary and were caused by Frontier's discovery violations and Frontier's "persistence in pursuing extensions, appeals, stays and other relief, associated with its failure to conduct adequate discovery." The record shows that the special master and district court carefully reviewed the submissions of the parties and determined that these expenses were caused by Frontier's delay and failure to comply with the discovery orders. We conclude that the district court did not abuse its discretion in ordering the payment of fees and costs and that the findings regarding the reasonable expenses and value of attorneys' work were not clearly erroneous.

■■■■ Finally, Frontier argues that the district court erred by refusing to stay the motion for fees and costs because Frontier was in receivership in New York. In support of this argument, Frontier cites Minnesota law governing claims of resident Minnesotans against insurers domiciled in reciprocal states:

> In a liquidation proceeding in a reciprocal state against an insurer domiciled in that state, claimants against the insurer who reside within this state may file claims either with the ancillary receiver, if any, in this state, or with the domiciliary liquidator. Claims must be filed on or before the last dates fixed for the filing of claims in the domiciliary liquidation proceeding.

Minn.Stat. § 60B.58, subd. 1 (2008). But because Frontline was seeking fees and costs as a conduct-based sanction, and not

as an independent claim or action, this statutory provision does not preclude Frontline from seeking such fees and costs.

## DECISION

The district court's dismissal of appellant's claims against all respondents was not an abuse of discretion in light of appellant's repeated failure to comply with multiple court orders and discovery deadlines and the prejudice appellant's willful failure caused respondents. Although appellant is engaged in a receivership proceeding in New York, the district court did not abuse its discretion by ordering the payment of fees and costs to respondents because such fees and costs are granted as a sanction and not an independent claim.

**Affirmed.**