*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1330**

Katie Nesbit,
Respondent,

vs.

Antonio Arellano,
Appellant,

Emilio Trevino,
Defendant.

**Filed March 30, 2015
Affirmed
Bjorkman, Judge**

Dakota County District Court
File No. 19HA-CV-12-4341

Katherine A. Brown Holmen, Dudley and Smith, P.A., St. Paul, Minnesota (for respondent)

Louise A. Behrendt, Stich, Angell, Kreidler, Dodge & Unke, P.A., Minneapolis, Minnesota; and

Troy A. Bachmann, Beth K. Bussian, Eden Prairie, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and

Reyes, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges the default judgment entered as a sanction for his repeated discovery violations, arguing that (1) the district court erred by entering a default judgment on all issues because his conduct did not impair respondent's ability to prove damages and (2) the record does not support the $100,000 damages award.  We affirm.

**FACTS**

On January 7, 2010, respondent Katie Nesbit was injured in a hit-and-run car accident.  In 2012, she sued appellant Antonio Arellano, alleging that he negligently drove the other vehicle and caused her injuries.  Arellano answered the complaint, admitting that he was driving in the lane next to Nesbit, but denying that he was negligent and caused her injuries.  A jury trial was scheduled for mid-2013.

Nesbit served Arellano with notice of taking his deposition on February 27, 2013. Arellano did not appear and offered no explanation for his absence.  About a month later, Arellano's lawyer informed Nesbit that Arellano sold the vehicle to Emilio Trevino before the accident and had no first-hand knowledge of the accident.  Nesbit filed an amended complaint alleging that either Arellano or Trevino was driving the vehicle involved in the accident.

Nesbit renoticed Arellano's deposition for May 21.  Arellano failed to appear, without explanation.  Counsel for the parties agreed to reschedule the trial to February 2014.  Nesbit noticed Arellano's deposition for August 1; Arellano again failed to appear without explanation.

Nesbit moved the district court to compel Arellano's appearance at a deposition and to impose sanctions. By order dated September 9, the district court directed Arellano to appear for and provide testimony at a deposition, and ordered him to pay Nesbit's reasonable attorney fees incurred in bringing the motion. The district court stated that, if Arellano did not attend the deposition, Nesbit could renew her request for sanctions, up to and including striking his pleadings and entering judgment by default.

Nesbit scheduled the deposition for September 24. Arellano did not appear and, as before, gave no explanation. Nesbit once again moved to compel Arellano's appearance and requested various sanctions. The district court conducted a hearing on January 22, 2014. Arellano appeared at the hearing with his lawyer, who assured the court that Arellano would appear for a deposition if given yet another opportunity. The district court once again declined to impose sanctions but postponed the trial for two months, and warned Arellano that he would be found in default if he failed to appear at the next scheduled deposition.

Nesbit rescheduled the deposition for February 17. Arellano did not appear. Nesbit filed an affidavit of default. Arellano's lawyer responded by letter, arguing that "the appropriate sanction, under these circumstances, is a default judgment with respect to liability only." On February 27, the district court entered a default judgment against Arellano in the amount of $100,000.[1]

---

[1] The February 27 judgment was a partial judgment because Nesbit's claim against Trevino remained unresolved. She subsequently dismissed her claim against Trevino.

3

Arellano moved the district court to reopen or vacate the judgment "as to damages only," arguing that Nesbit did not prove her damages and that her receipt of collateral-source payments should be addressed. The district court temporarily vacated the default judgment "with respect to the amount of the damages award," ordering Nesbit to submit supporting documentation and to "candidly address any collateral offsets she has received that have reduced her losses."

Nesbit submitted four affidavits. In the first, Nesbit's lawyer avers that she has practiced personal-injury law for more than 20 years and believes, based on that experience, that "a net judgment in the amount of $100,000 is a fair and reasonable amount in this case given the facts and Ms. Nesbit's injuries and damages." In the second affidavit, Nesbit details her past and ongoing medical care and past wage loss, acknowledging receipt of payments totaling $20,941.38 from her no-fault insurer. She also describes the pain she has experienced following the accident and how her injuries interfere with her life and work. The third affidavit has eight attachments documenting the medical expenses Nesbit incurred. In the fourth affidavit, Nesbit's chiropractor describes the care he provided to Nesbit from shortly after the accident through late April 2014. He notes that Nesbit's condition is "fairly stable," but that she "is always however, experiencing some kind of pain," and he opines that the degenerative joint changes caused by her injury are permanent and "will most surely progress with time." He also includes five attachments documenting Nesbit's medical care and expenses.

Based on Nesbit's submissions, the district court found that she suffered a substantial permanent injury as a result of the motor-vehicle accident, that her condition

4

continues to require monthly chiropractic care and may worsen, and that an award of $100,000 is warranted. The district court reinstated the default judgment against Arellano. Arellano appeals.

## D E C I S I O N

**I.      The district court did not abuse its discretion by entering default judgment against Arellano based on his egregious discovery violations.**

A district court may impose sanctions if a party fails to obey a discovery order. Minn. R. Civ. P. 37.02(b). Authorized sanctions range from awarding attorney fees and costs caused by the discovery violation up to dismissing all or part of an action "or rendering a judgment by default against the disobedient party." *Id.* We review a district court's imposition of sanctions for abuse of discretion. *State by Humphrey v. Ri-Mel, Inc.*, 417 N.W.2d 102, 108 (Minn. App. 1987), *review denied* (Minn. Feb. 17, 1988).

Because "the primary objective of the law [is] to dispose of cases on the merits," the extreme sanctions of dismissal and entry of a default judgment are only appropriate under "exceptional circumstances." *Firoved v. Gen. Motors Corp.*, 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967). Chief among such circumstances are those in which a party's discovery violations impair the other party's ability to defend against or prove a claim. *See Frontier Ins. Co. v. Frontline Processing Corp.*, 788 N.W.2d 917, 924-26 (Minn. App. 2010), *review denied* (Minn. Dec. 14, 2010); *see also Chicago Greatwestern Office Condo. Ass'n v. Brooks*, 427 N.W.2d 728, 730-31 (Minn. App. 1988) (stating that prejudice to the moving party is "a prime consideration"). Moreover, district courts must have broad discretion to manage cases and enforce calendar rules to prevent "unnecessary

5

and inexcusable" delays. *Firoved*, 277 Minn. at 284, 152 N.W.2d at 369. A party that "willfully and without justification or excuse" fails to comply with discovery orders effectively "forfeits the right to a trial on the merits." *Ri-Mel*, 417 N.W.2d at 108-09 (citing *Breza v. Schmitz*, 311 Minn. 236, 237, 248 N.W.2d 921, 922 (1976)).

The extent of the sanction to be imposed depends on numerous factors: (1) whether the district court set a certain date by which compliance was required, (2) whether the district court warned of potential sanctions for noncompliance, (3) whether the noncompliance with discovery was "an isolated event or part of a pattern," (4) whether the noncompliance was "willful or without justification," and (5) whether the moving party has demonstrated prejudice. *Frontier Ins.*, 788 N.W.2d at 923.

All five of these factors are implicated here. It is undisputed that the district court told Arellano what he needed to do and when—attend a deposition as scheduled by Nesbit—and personally warned him of the consequences of noncompliance. And Arellano concedes that his repeated failure to appear for deposition and his violation of two court orders prejudiced Nesbit by depriving her of evidence necessary to address liability and warrants entry of a default judgment. But he contends that the default should only extend to the issue of liability because his non-appearances did not impair Nesbit's ability to prove damages. We are not persuaded for two reasons.

First, the unique and undisputed record before us demonstrates that Arellano's numerous discovery violations were egregious. Arellano received clear notice of each scheduled deposition. The district court twice issued orders warning Arellano that he

6

could be sanctioned for failing to appear for deposition, and personally advised him in January 2014 that if he did not attend the next scheduled deposition default judgment would be entered against him. Despite these clear notices and the district court's warnings, Arellano failed to appear for five scheduled depositions over the course of a year. And Arellano's conduct undisputedly prejudiced Nesbit by causing her inconvenience and delay and depriving her of critical evidence. After retracting his admission that he was driving the vehicle involved in the accident six months into the case, Arellano repeatedly flouted Nesbit's attempts to clarify this key liability issue in the only way possible—by taking his deposition. Arellano's actions left the case at a stand-still for an entire year and caused trial to be rescheduled twice. Arellano's pattern of wholly unjustified noncompliance with discovery is precisely the type of conduct that amounts to forfeiture of a right to trial. *See Ri-Mel*, 417 N.W.2d at 109-10 (affirming entry of default judgment when appellants repeatedly failed to cooperate with deposition or appear for court as ordered, despite being warned that default sanction would result). *Frontier Ins.*, 788 N.W.2d at 923-25 (affirming dismissal of appellant's claims against all defendants based on failure to provide meaningful discovery responses).

Second, we are not persuaded that the district court's decision to employ the harsh—but permitted—sanction of default judgment constitutes abuse of discretion. Arellano cites no authority for the proposition that the district court could have entered a partial default judgment on the issue of liability. By definition, a default judgment is not divisible; it is a judgment that fully and finally decides the case. *See* Minn. R. Civ. P. 54.01 (defining judgment as "the final determination of the rights of the parties in an

7

action"). Arellano essentially argues that a more appropriate sanction would have been an order refusing to allow him to defend on liability. Such a sanction would have been well within the district court's discretion. *See* Minn. R. Civ. P. 37.02(b)(2)-(3) (permitting discovery sanctions of refusing to allow disobedient party to support designated defenses or striking pleadings). But it also was within the district court's discretion to determine that such a sanction inadequately addresses Arellano's conduct. The district court's more severe sanction takes into account not only the prejudice to Nesbit but the numerous warnings Arellano received and his prolonged and unexcused recalcitrance. On this singular record, we conclude the district court did not abuse its broad discretion by entering a default judgment as a sanction.

## II. The record supports the district court's award of damages.

"A party entitled to judgment by default shall move the court for judgment in that party's favor, setting forth by affidavit the facts which entitle that party to relief. Either the party or the party's lawyer may make the affidavit, which may include reliable hearsay." Minn. Gen. R. Pract. 117.02. The moving party's submissions must provide sufficient evidence to support the damages award. *See Wiethoff v. Williams*, 413 N.W.2d 533, 537 (Minn. App. 1987) (citing *Hill v. Tischer*, 385 N.W.2d 329, 332 (Minn. App. 1986)) (stating that it "may be appropriate" to vacate a default judgment "where there is not sufficient evidence to support an award of damages").

The district court found that Nesbit incurred medical expenses and lost wages of more than $23,000 and continues to suffer from permanent injuries that may worsen over time. Based on those findings, the district court awarded damages of $100,000. Arellano

8

argues that the record does not support that award for two reasons. We address each in turn.

First, Arellano contends that Nesbit's future damages are speculative. He compares Nesbit's evidence to the "off the cuff" estimate of damages we reversed in *Hill* and the award "taken directly" from the complaint, without any medical evidence, that we reversed in *Wiethoff*. *See Wiethoff*, 413 N.W.2d at 537; *Hill*, 385 N.W.2d at 332 (quotation omitted). We disagree with this comparison. Nesbit presented her own affidavit establishing that she continues to experience pain on a regular basis and avoids activities that aggravate the pain, such as bending, lifting, and sitting or standing for long periods of time. Despite those restrictions, she continues to require daily pain medication and monthly chiropractic treatment. Her chiropractor's affidavit indicates that Nesbit sustained a permanent injury and that her degenerative joint changes "will most surely progress with time." We have previously stated that a plaintiff may prove damages for future pain or disability by presenting evidence that she is not fully recovered at the time of trial. *Renswick v. Wenzel*, 819 N.W.2d 198, 204-05 (Minn. App. 2012), *review denied* (Minn. Oct. 16, 2012).

Second, Arellano argues that the district court erred by not reducing the judgment by the amount Nesbit received from collateral sources, as required by Minn. Stat. § 548.251 (2014). We are not persuaded. While the district court did not expressly address the collateral-source issue in its final order, we do not presume that this silence indicates error. *White v. Minn. Dep't of Natural Res.*, 567 N.W.2d 724, 734 (Minn. App. 1997), *review denied* (Minn. Oct. 31, 1997). Arellano bears the burden of demonstrating

9

both error and prejudice. *See id.*; *Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845 (Minn. App. 1993), *review denied* (Minn. June 28, 1993). He has not done so.

In his motion to reopen or partially vacate the default judgment, Arellano asked the district court to make the required collateral-source offset. The court reopened the record and directed Nesbit to provide information about collateral-source payments. Nesbit did so. And she contemporaneously presented evidence in the form of her lawyer's affidavit that "a *net* judgment in the amount of $100,000 is a fair and reasonable amount." (Emphasis added.) On this record, we conclude that the $100,000 award represents the net damages remaining after the collateral-source offset. The district court's failure to make express findings with respect to collateral sources is harmless.

In sum, the district court did not abuse its broad discretion by entering a $100,000 default judgment against Arellano as a sanction for his extraordinary recalcitrance and based on the affidavits Nesbit supplied.

**Affirmed.**