*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0664**

First American Title Insurance Company,
Respondent,

vs.

National Title Resources Corp.,
dba Northwest Title Agency, et al.,
Co-Appellants,

Wayne Holstad,
Appellant.

**Filed February 1, 2016
Affirmed
Kirk, Judge**

Washington County District Court
File No. 82-CV-13-6236

Mark E. Greene, Brooke C. Nelson, Bernick Lifson, P.A., Minneapolis, Minnesota (for respondent)

Nathan M. Hansen, North St. Paul, Minnesota; and H. Alan Kantrud, Lake Elmo, Minnesota (for co-appellants)

Wayne B. Holstad, Frederic W. Knaak, Holstad & Knaak, PLC, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellants appeal from an attorney-fees judgment and a default judgment entered against them as discovery sanctions. We affirm.

## FACTS

In 2013, respondent First American Title Insurance Company (First American) brought this action against appellants Wayne Holstad, Joel Holstad, and National Title Resources Corp., d/b/a Northwest Title Agency (National) (collectively, the Holstads). Wayne and Joel Holstad are brothers. Joel Holstad is the sole owner and president of National.

Wayne Holstad and Joel Holstad each have or have had an interest or role in other businesses in the title industry. Wayne Holstad co-founded Northwest Title and Escrow Corp. (NTEC) in 1983, and also served as its outside counsel. Joel Holstad was a shareholder of NTEC from 1984 to 1988, when he formed National. Wayne Holstad is currently the chief executive officer of Northwest Title Agency, Inc. (NTA),[1] a former subsidiary of NTEC. In approximately 2006, Wayne Holstad purchased NTA. NTEC was dissolved in 2011. In December 2011, Wayne Holstad agreed to sell Joel Holstad NTA. The Holstads assert that Joel Holstad never ultimately paid for the business, but served as its chief operating officer until August 2012, when it ceased operations.

---

[1] In 2013, NTA, changed its name to Northwest Escrow Services Corp. and then to National Title Agency Escrow Inc. In December 2014, it changed its name back to NTA. This opinion refers to it by its original name.

In its complaint, First American alleged that the Holstads were liable to First American on a judgment against NTEC and a judgment against NTA. First American's claims were based on principles that permit piercing the corporate veil; an assertion that the Holstads were the successors and/or alter egos of NTEC and NTA; fraud; unlawful business practices; and unjust enrichment.

On October 30, 2014, First American served separate requests for admissions, requests for production of documents, and interrogatories on the Holstads, through the e-filing system (EFS). Only the interrogatories for Wayne Holstad were opened, by the attorney representing Joel Holstad and National. On December 10, First American sent a letter to the Holstads' attorneys advising them that it had not received their discovery responses and warning them that failure to provide responses within 10 days would result in a motion to compel. First American addressed the letter to each of the Holstads' attorneys and referred to discovery served upon "your clients."

On December 19, Wayne Holstad responded by answering only the interrogatories. He did not respond to First American's requests for production or its requests for admissions. In his answers to the interrogatories, Wayne Holstad stated that he had not received the requests for admissions. By that date, First American did not receive any kind of discovery response from Joel Holstad or National.

On January 2, 2015, First American moved for summary judgment, together with an alternative motion to compel discovery responses. The same day, Wayne Holstad filed a cross-motion for summary judgment, seeking dismissal of all of First American's claims.

3

On January 15, Joel Holstad served answers to First American's interrogatories and responses to its requests for production. He produced nothing in response to the requests for production, responding to every request by stating "NONE" or that he objected to the request because it was overbroad and irrelevant. Specifically, he objected to production of his personal tax returns since 2009 and certain bank records in his possession or to which he had access. Joel Holstad never responded to the requests for admissions.

The same day, National served answers to First American's interrogatories and responses to requests for admissions. National never responded to requests for production of documents.

On January 30, the district court held a hearing on all motions. It granted First American's motion to compel and reserved ruling on the summary-judgment motions. The district court required that, by February 27, the Holstads pay First American $999 for attorney fees, and that the parties "meet and confer" in person to attempt to resolve discovery issues. In addition, it ordered:

> Should any [d]efendant fail to serve answers or respond to requests for production, or fail to pay attorney fees to [First American] as awarded above, within the deadlines provided in this [o]rder, then [First American] may make, file, and serve upon the failing [d]efendant, an affidavit setting forth the [d]efendant's failure. Unless within three days after service of such affidavit of failure, the failing [d]efendant shall make, file, and serve [First American] with a verified objection, setting forth adequate and substantive reasons for the failure, and within that same time, shall schedule and serve notice of a further hearing to determine why such [d]efendant's [a]nswers to [First American]'s [c]omplaint should not be stricken, such [d]efendant's [a]nswer to [First American]'s [c]omplaint shall be stricken, and judgment by default shall be entered in favor of [First American].

Wayne Holstad's counsel never met with First American to discuss discovery. Wayne Holstad also never paid or communicated with First American about the attorney-fees judgment. Although Joel Holstad and his counsel met with First American as ordered, Joel Holstad did not pay the attorney-fees judgment.

On March 3, First American filed an affidavit with the district court describing the Holstads' noncompliance with the order compelling discovery. On March 6, Wayne Holstad's attorney filed a responsive affidavit. Neither Joel Holstad nor National responded to First American's affidavit. None of the Holstads scheduled or served a notice of a further hearing to determine why their answers should not be stricken and judgment by default entered in favor of First American.

On March 23, First American wrote a letter to the district court asking it how to proceed. None of the Holstads responded to this letter. On March 27, following the district court's instructions, First American filed an application for a default judgment. A week later, on April 3, Joel Holstad and National objected to the entry of a default judgment. On April 7, Wayne Holstad did the same. None of the Holstads requested a hearing to discuss why the district court should not enter a default judgment.

On April 13, the district court ordered that the Holstads' answers be stricken and a default judgment be entered against them. The district court was careful to note that it was not entering default judgment in response to the Holstads' failure to pay the attorney-fees judgment, but rather their failure "to avail themselves of the simple procedure that was given to them to appear and defend against the default judgment being entered."

The Holstads appeal.

**DECISION**

A district court may impose sanctions if a party fails to obey a discovery order. Minn. R. Civ. P. 37.02(b). Authorized sanctions range from awarding attorney fees and costs caused by the discovery violation up to dismissing all or part of an action "or rendering a judgment by default against the disobedient party." *Id.* We review a district court's discovery-related orders for abuse of discretion. *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen*, 454 N.W.2d 916, 921 (Minn. 1990); *Frontier Ins. Co. v. Frontline Processing Corp.*, 788 N.W.2d 917, 922 (Minn. App. 2010), *review denied* (Minn. Dec. 14, 2010).

We defer to a district court's factual findings unless they are clearly erroneous. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999). A finding is clearly erroneous if, after reviewing the record, we are "left with a definite and firm conviction that a mistake has been made." *Id.* (quotation omitted). When making this determination, we view the evidence in the light most favorable to the district court's findings. *Trondson v. Janikula*, 458 N.W.2d 679, 682 (Minn. 1990). We also defer to its credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). This deference includes a district court's determinations regarding the credibility of affidavits. *Hestekin v. Hestekin*, 587 N.W.2d 308, 310 (Minn. App. 1998).

## I. The district court did not abuse its discretion in imposing the attorney-fees sanction.

### A. Alleged failure of service

Wayne Holstad argues that the district court erred by imposing the attorney-fees sanction because First American never served him with the discovery requests, and that an

6

affidavit of service is a "critical prerequisite" in a case in which parties challenge such service. Likewise, Joel Holstad and National argue that the attorney-fees sanction was inappropriate because they did not receive the discovery requests.

The General Rules of Practice provide that an affidavit of service is not necessary for documents served through the EFS:

> The records of the [EFS] indicating transmittal to a registered recipient who has designated an e-mail address for service of process in the case shall be sufficient proof of service on the recipient for all purposes.

Minn. R. Gen. Pract. 14.05 (2012).[2] As the district court found, EFS records in this case show that each discovery document was served via the EFS, with email notice upon counsel for Wayne Holstad, his legal assistant, and counsel for Joel Holstad and National. Notably, none of the Holstads ever described problems obtaining the discovery requests through the EFS after First American's letter clearly notified them of their existence. Further, none of the Holstads filed a motion for relief due to technical problems with the EFS. *See* Minn. R. Gen. Pract. 14.01(c)(2) ("Upon motion and a showing that an electronically served document was unavailable to or not received by a party served, the court may enter an order extending the time for responding to that document.").

We conclude that the district court's finding that First American served the Holstads with the discovery requests via the EFS is not clearly erroneous. *Fletcher*, 589 N.W.2d at 101. In addition, under Minn. R. Gen. Pract. 14.05, the lack of an affidavit of service was not

---

[2] This rule was amended effective July 1, 2015. It still provides that EFS records "shall be sufficient proof of service on the recipient for all purposes." Minn. R. Gen. Pract. 14.05 (2015).

a barrier to imposing sanctions against the Holstads for their failure to timely respond to all of the discovery requests.

### B. Meet-and-confer requirement

Minn. R. Civ. P. 37.01(b) provides that a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." Minn. R. Gen. Pract. 115.10 also states that "[n]o motion will be heard unless the parties have conferred either in person, or by telephone, or in writing in an attempt to resolve their differences prior to the hearing." The moving party must certify compliance with the rule or reasons for not complying. *Id.*

Wayne Holstad asserts that the district court lacked the authority to impose sanctions because First American failed to submit a certification that the parties had met and conferred regarding discovery, along with its motion to compel. He did not raise this issue before the district court. Because the district court did not rule on the issue, we decline to consider it on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (reviewing court must generally consider only issues presented to and considered by district court).

However, we note that, because both First American and Wayne Holstad moved for summary judgment at the January 30, 2015 hearing, both parties had an obligation to initiate a settlement conference prior to the motion hearing under rule 115.10. *See* Minn. R. Gen. Pract. 115.10 (providing that it is the "moving party" that "shall initiate the [settlement] conference"). Further, there is no caselaw holding that failing to meet and confer precludes the district court from hearing a motion to compel or granting sanctions.

8

## C.      Punishing a party for attorney conduct

Under basic principles of agency, attorney neglect is chargeable to his or her client. *Finden v. Klaas*, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964).  However, courts are reluctant to punish an innocent client for his counsel's neglect.  *See, e.g.*, *Charson v. Temple Israel*, 419 N.W.2d 488, 491 (Minn. 1988) (granting relief from judgment where the client was not complicit in the negligence or wrongdoing of his attorney); *Kurak v. Control Data Corp.*, 410 N.W.2d 34, 36 (Minn. App. 1987) ("A litigant is not to be penalized for the neglect or mistakes of his lawyer. Courts will relieve parties from the consequences of the neglect or mistakes of their attorney, when it can be done without substantial prejudice to their adversaries." (quotation omitted)).

Wayne Holstad argues that the district court should not have punished the Holstads for any failings of their attorneys in not responding to the discovery requests.  Again, he did not raise this issue before the district court and, therefore, we decline to consider it on appeal.  *See Thiele*, 425 N.W.2d at 582.  Nevertheless, we note that the record does not conclusively establish that the Holstads were innocent in failing to adequately and timely respond to First American's discovery requests.  This is especially the case given that Wayne Holstad is an attorney, and the fact that Joel Holstad signed discovery responses that were deemed inadequate by the district court.

Therefore, the district court did not abuse its discretion in imposing the attorney-fees sanction.  *See Shetka*, 454 N.W.2d at 921.

**II.** **The district court did not err in striking the Holstads' answers and issuing a default judgment.**

Because "the primary objective of the law [is] to dispose of cases on the merits," the most punitive sanction of dismissal and entry of a default judgment is only appropriate under "exceptional circumstances." *Firoved v. Gen. Motors Corp.*, 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967). Chief among such circumstances are those in which a party's discovery violations impair the other party's ability to defend against or prove a claim. *See Frontier Ins.*, 788 N.W.2d at 924-26; *see also Chicago Greatwestern Office Condo. Ass'n v. Brooks*, 427 N.W.2d 728, 730-31 (Minn. App. 1988) (stating that prejudice to the moving party is "a prime consideration" in determining the severity of a sanction). Moreover, district courts must have broad discretion to manage cases and enforce calendar rules in order to prevent "unnecessary and inexcusable delays." *Firoved*, 277 Minn. at 284, 152 N.W.2d at 369. A party that "willfully and without justification or excuse" fails to comply with discovery orders effectively "forfeits the right to a trial on the merits." *State by Humphrey v. Ri-Mel, Inc.*, 417 N.W.2d 102, 108-09 (Minn. App. 1987) (citing *Breza v. Schmitz*, 311 Minn. 236, 237, 248 N.W.2d 921, 922 (1976)), *review denied* (Minn. Feb. 17, 1988).

The severity of the discovery sanction to be imposed depends on several factors: (1) whether the district court set a certain date by which compliance was required; (2) whether the district court warned of potential sanctions for noncompliance; (3) whether the noncompliance with discovery was "an isolated event or part of a pattern"; (4) whether the noncompliance was "willful or without justification"; and (5) whether the moving party has demonstrated prejudice. *Frontier Ins.*, 788 N.W.2d at 923.

All five factors are present here. It is undisputed that the district court told the Holstads what they needed to do and when, including: pay the attorney-fees award and meet and confer by February 27, and, within three days after service of any "affidavit of failure" filed by First American, submit a "verified objection" and schedule a hearing to determine why their answers should not be stricken and default judgment entered. In so ordering, the district court amply warned the Holstads of the potential consequences of noncompliance.

The record also demonstrates that the district court did not clearly err in finding that the pattern of noncompliance was willful and without justification. *Id.* Joel Holstad and National began this matter by "challeng[ing] [] the sufficiency of process without factual or legal basis," and only answered after First American had filed an affidavit of default. The Holstads then ignored First American's discovery requests when first served and after receiving the December 10 letter, with the exception of Wayne Holstad's answers to interrogatories. Even after First American filed a motion to compel, none of the Holstads fully responded to the discovery requests. Wayne Holstad failed to meet and confer regarding discovery as ordered, and the Holstads failed to pay the attorney-fees judgment as ordered without providing an excuse to the district court. Finally, after First American filed an affidavit of noncompliance, none of the Holstads followed the straightforward procedure required by the district court to present a defense to avoid default judgment.

The record also supports the district court's conclusion that the Holstads' conduct prejudiced First American by depriving it of important evidence and delaying the case for months. *Id.* For example, both Joel Holstad and Wayne Holstad have claimed that they do not have the financial records of NTA. In July 2013, Wayne Holstad asserted that much of

11

the financial information related to NTA was stored electronically and that he did not have access to it. By January 2015, he asserted that the data from the company's "computerized operating accounting system was lost," causing the need to manually recreate records for tax purposes.

Business records are key to proving claims involving piercing the corporate veil and successor liability. *See Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979). Based upon the record, the likelihood of gaining complete corporate records from the entities involved steeply declined over time, especially because NTEC is now dissolved and NTA is no longer operating.

The Holstads' pattern of unjustified noncompliance with discovery is the type of conduct that can amount to forfeiture of the right to trial. *See Ri-Mel*, 417 N.W.2d at 109-10 (affirming entry of default judgment when appellants repeatedly failed to cooperate with deposition or appear for court as ordered, despite being warned that default sanction would result); *Frontier Ins.*, 788 N.W.2d at 923-25 (affirming dismissal of appellant's claims against all defendants based on failure to provide meaningful discovery responses). On this record, we conclude that the district court did not abuse its broad discretion by entering a default judgment as a sanction. *See Shetka*, 454 N.W.2d at 921.

Having affirmed the default judgment, we do not reach Wayne Holstad's argument that he is entitled to judgment as a matter of law.

**Affirmed.**