*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1569**

Christian Fitchett, et al.,
Respondents,

vs.

Dolezal Creative Design Build Inc., et al.,
Appellants.

**Filed June 22, 2026**
**Affirmed**
**Smith, Tracy M., Judge**

Hennepin County District Court
File No. 27-CV-22-18746

Kyle S. Willems, Amanda M. Williams, Beth L. LaCanne, James C. Kovacs, Bassford Remele, P.A., Minneapolis, Minnesota (for respondents)

Patrick H. O'Neill, Jr., Patrick H. O'Neill, III, Larson • King, LLP, St. Paul, Minnesota (for appellants)

Considered and decided by Wheelock, Presiding Judge; Connolly, Judge; and Smith, Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

Appellants challenge the district court's grant of default judgment against them as well as the denial of their motion under Minnesota Rule of Civil Procedure 60.02(a) to vacate the default judgment. We affirm.

# FACTS

On October 6, 2021, respondents Christian Fitchett and Layla Dowlatshahi entered into a contract with appellant Dolezal Creative Design Build Inc. (Dolezal Creative), owned by appellant Jessica Dolezal (Dolezal), for a home-remodeling project. The project included substantial renovations to the home's kitchen, dining area, mudroom, powder room, greenhouse, basement, stairs, attic space, and HVAC system. The contract price was $273,617, with partial payments due as provided over the course of the contract. Section 5(d) of the contract provided:

> Substantial completion of the Improvements is expected to occur on or about <u>March 15, 2022[.]</u> Owner acknowledges, however that this date is only an estimate and is subject to change due to many factors including, but not limited to: (i) changes in the Plans requested by Owner; (ii) delays in receiving materials specified in the Plans; (iii) delays caused by shortages of labor, materials or equipment; . . . (vi) other causes reasonably beyond Builder's control.

Appellants began work on the remodel, and respondents temporarily moved out of the home during construction. Progress stalled several times, and the project passed the March 15 substantial-completion date. After several extensions of the substantial completion date, respondents retained counsel, who contacted appellants in September 2022 in an effort to get the project "back on track." Respondents requested a project-completion plan and documents related to the remodel, including invoices and proof of payments exchanged between appellants and subcontractors and material suppliers, contracts with subcontractors and material suppliers, work orders and permits, and an accounting of how respondents' partial payments had been used. Appellants did not comply

2

with respondents' requests. By letter dated October 10, 2022, respondents informed appellants that they would hire a new contractor to complete the work and that appellants were in breach of the contract.

In November 2022, appellants served and filed for record a mechanic's lien statement for the lien on respondents' home, asserting that respondents owed Dolezal Creative $60,833.90 for work completed on their home. Appellants assert that respondents prevented them from accessing the property and inspecting or completing the work.

Respondents sued appellants in December 2022, asserting claims of breach of contract, negligence, breach of express and implied warranties, slander of title, fraud by omission, negligent misrepresentation, fraudulent misrepresentation, consumer fraud in violation of the Minnesota Statutes section 325F.69 (2024),[1] civil theft in violation of Minnesota Statutes section 604.14 (2024), conversion, and nonpayment for improvement in violation of Minnesota Statutes section 514.02 (2024). Respondents also asserted a claim to pierce the corporate veil. Appellants, represented by their first counsel (first counsel), counterclaimed for breach of contract, unjust enrichment, account stated, and quantum meruit.

An initial scheduling order set a trial date of November 27, 2023. In July 2023, respondents filed a motion to compel discovery from appellants. Before a hearing on the motion, the parties submitted a stipulation to amend the scheduling order to extend some deadlines, including the deadline to complete discovery, but leaving the trial date set for

---

[1] We cite the current version of these statutes because the version is irrelevant to the issues in this appeal.

3

November 27. The district court adopted the amended scheduling order. Appellants did not contest the motion to compel. On July 31, at the hearing on the motion, the district court held the record open to allow appellants time to complete discovery and for the parties to engage in mediation. On September 19, the district court held a status conference on the discovery issue, and respondents submitted correspondence asserting ongoing deficiencies by appellants. The district court took respondents' motion to compel under advisement on October 10.

On September 19, the parties submitted another stipulation to amend the scheduling order, this time including moving the trial date to the district court's April-May 2024 trial block. The district court approved this proposed amended scheduling order.

On December 20, the district court filed its order on respondents' July motion to compel discovery. It ruled that, because it was undisputed that appellants' discovery responses had been insufficient and because appellants did not raise any defense to the motion, respondents were entitled to an award of expenses and attorney fees in an amount to be determined. In January 2024, respondents filed their request for expenses and attorney fees. That same month, respondents filed a motion for partial summary judgment and a motion for leave to amend the complaint to assert a claim for punitive damages. After a hearing, the district court denied the motions for partial summary judgment and to amend the complaint to seek punitive damages. In the same order, the district court awarded respondents $14,832.50 in costs and attorney fees for the motion to compel.

Shortly thereafter, appellants' first counsel withdrew from representation. According to respondents, appellants could not pay the balance owed to their counsel. On

4

June 12, new counsel for appellants (second counsel) filed a notice of appearance. A status conference was held on July 9, and on July 15 the district court filed a pretrial order and order for trial (pretrial order), setting October 28 as the deadline for submitting pretrial submissions and November 18 for the jury trial to begin. The pretrial order stated in bold:

> **Failure to comply with this order may subject parties to sanctions, including but not limited to: refusing to allow the noncompliant party to support or oppose designated claims or defenses; prohibiting the noncompliant party from introducing designated matters in evidence; striking pleadings or parts of pleadings; staying further proceedings until the order is obeyed; dismissing the action or a part of the action; or rendering a judgment by default against the noncompliant party. Failure to furnish instructions and/or Proposed Special Verdict Form shall be deemed a waiver by each party as to the right to a trial by jury on the issue so omitted pursuant to the provisions of Rule 49.01(a) of the Minnesota Rules of Civil Procedure.**

On August 29, appellants' second counsel gave notice of his imminent withdrawal. Together with that notice, the parties, in a letter signed by both parties' counsel, requested a new trial schedule with a pretrial hearing set for January 9 and a trial date of January 13, 2025. The letter did not mention any extension of the October 28, 2024 deadline for pretrial submissions. On October 18, the district court emailed respondents' counsel and appellants, setting the pretrial-hearing and trial dates as requested.

On October 25, 2024, appellant Dolezal emailed respondents' counsel as follows:

> As you know, after [first counsel] I retained [second counsel] as the attorney to handle this case. As of Sept 6th, 2024 [second counsel] closed his firm because he accepted a position with the Met Council. At that time, [second counsel] had a conversation about this case with attorney [B.C.], after their conversation [B.C.] was willing to take on the case - and that is when [second counsel] referred me to [B.C.]. [B.C.] and

5

I had conversations about this case and he thought it would be a good fit for him. It was my understanding that we were on pace for him to have this case, until recently he dug a little deeper and realized that this may be too much for him. [B.C.] is hoping to retire, and this case seems to overwhelm him. As of Wednesday 10/23/24 he has denied taking this case.

This means, I am now diligently searching/ interviewing for a new attorney.

The courts have confirmed that the trial date will be moved to January 2025, *I assume that the November trial deadlines no longer apply, and that the October 28th deadline for trial documents will move closer to the trial date*. I would think that we will get a revised scheduling order to match?

I do not want to miss deadlines, nor am I trying to avoid them. I'm sure you can understand that a new attorney meeting this deadline is impossible. Will you confirm that these deadlines will move?

(Emphasis added.) Respondents' counsel did not respond to this email.

Dolezal claims that "sometime in October" she contacted the court clerk assigned to the case to ask if there were upcoming deadlines or hearings and was told by the clerk that there was "nothing in this case until December." On October 28, respondents filed their pretrial submissions, including motions in limine, and sent them to appellants. Appellants did not file any pretrial submissions.

On December 11, respondents' counsel filed a letter to the district court requesting a status conference, citing their concern that respondents—who by then were residing in Germany—would have to unnecessarily incur travel and lodging costs to attend the January 9, 2025 pretrial hearing for a case that might end in default judgment due to appellants' "ongoing failure to participate in this litigation." They asserted that appellants

6

had "ignored all mandatory pretrial requirements, including submitting pretrial filings and participating in other aspects of trial preparation." Appellants were copied on this letter.

On December 20, appellants emailed respondents' counsel as follows:

> Have you heard from the judge about [respondents' request for a status conference]?
>
> Earlier I spoke with the courts and all the trial deadlines were moved accordingly to the new trial date. With the scheduling order, it says trial documents are due today. I have not been able to find a new attorney due to timing etc. and I don't have trial documents ready.
>
> I am not trying to avoid any of this, it's just that circumstances beyond my control have happened.

Respondents' counsel responded to appellants that same day, stating that they had not heard back from the judge and stating that, under the pretrial order, appellants were "very late" on their trial submissions.

Also on December 20, respondents filed a notice of motion and motion for default judgment to be heard on January 9, 2025, at 9:00 a.m.[2] On December 31, Dolezal filed a letter to the district court requesting a continuance of the trial and an affidavit describing her efforts to retain counsel. On January 6, 2025, the district court filed an order denying the continuance request and reaffirming the pretrial hearing date of January 9 and the trial date of January 13.

Appellants did not appear in court on January 9. The district court noted that it had sent emails out to Dolezal without response and that she had not contacted the district court

---

[2] On December 16, respondents also filed a second amended notice of motions and motions in limine, also to be heard on January 9, 2025, at 9:00 a.m.

directly since her December 31 letter requesting a continuance, which it denied. The district court noted that it had made clear that the parties were expected to be present at the pretrial hearing, which usually includes possible settlement negotiations, and that it had required respondents to return from Germany to participate. It also noted that the pretrial hearing was intended to address any motions in limine and other pretrial matters. The district court observed that appellants had been without counsel since August 2024 and noted that, as a corporation, Dolezal Creative could not be represented by an individual at trial but rather had to be represented by counsel. The district court heard respondents' motion for default judgment. It stated that it would grant respondents' motion, and on February 10, 2025, the district court filed an order granting default judgment for respondents and ordering appellants to pay respondents a total of $456,314.45 plus pre-judgment interest.

Appellants then retained counsel. Appellants filed a rule 60.02 motion to vacate the default judgment as result of excusable mistake or neglect and a motion to stay execution of the judgment. After a hearing and taking the matter under advisement, the district court allowed the parties to supplement the record on the issue of whether a subsequent judgment entered against appellants in a separate case could create substantial prejudice for respondents if the default judgment were vacated. The district court thereafter denied appellants' motions.

This appeal follows.

## DECISION

### I.    The district court did not abuse its discretion by granting default judgment.

Appellate courts review the entry of default judgment for an abuse of discretion. *Laymon v. Minn. Premier Props., LLC*, 903 N.W.2d 6, 17 (Minn. App. 2017), *aff'd*, 913 N.W.2d 449 (Minn. 2018). Appellants argue that the district court abused its discretion because it did not analyze the five factors laid out in *Frontier Insurance Co. v. Frontline Processing Corp.*, 788 N.W.2d 917 (Minn. App. 2010), *rev. denied* (Minn. Dec. 14, 2010), when granting default judgment. Respondents contend that appellants' argument against default judgment is forfeited because appellants "never argued to the district court that the Default Judgment should not have been entered in the first place" and that, even if the argument is not forfeited, the *Frontier* factors do not apply here and, even if they did, the factors support default judgment.

#### A.    Appellants' arguments are limited but properly before the court.

We first address respondents' assertion that appellants did not preserve their argument against default judgment. Respondents argue that appellants should have responded to the motion for default judgment or raised arguments at the January 9 hearing (which appellants did not attend). Alternatively, respondents assert that appellants should have appealed directly from the default judgment instead of pursuing a motion under Minnesota Rules of Civil Procedure 60.02.

Minnesota Rule of Civil Appellate Procedure 104.01, subdivision 2, provides that if a "party serves and files a proper and timely motion" under Minnesota Rules of Civil Procedure 60, the time for appeal of the underlying judgment runs "from the service by

9

any party of notice of filing of the order disposing of the last . . . motion outstanding." Additionally, Minnesota Rule of Civil Appellate Procedure 103.04 provides, "On appeal from or review of an order the appellate courts may review any order affecting the order from which the appeal is taken and on appeal from a judgment may review any order involving the merits or affecting the judgment."

In this appeal from the default judgment, appellants seek review of both the default judgment and the order denying relief under rule 60.02 This appeal is timely under Minnesota Rule of Civil Appellate Procedure 104.01 because the filing of appellants' rule 60.02 motion tolled the time to appeal the default judgment until a party's service of notice of filing of the order disposing of that motion. *See* Minn. R. Civ. App. P. 104.01, subd. 2(e). Additionally, although "[g]enerally, an order denying a motion to vacate a judgment entered as a sanction against a party who has participated in the action is not independently appealable," when a party's motion to vacate tolled the time to appeal the underlying judgment, the scope of review "extends to the order denying the motion[] to vacate." *Langford Tool & Drill Co. v. 401 Group, LLC*, No. A11-1928, 2012 WL 3641002, at *3 (Minn. App. Aug. 27, 2012). Accordingly, review of the district court's grant of default judgment is properly before us.

The arguments on appeal, however, are limited to those raised in the district court. "It is a well-settled principle of law that a party is not entitled to raise a question for the first time on appeal." *Thorp Loan & Thrift Co. v. Morse*, 451 N.W.2d 361, 362-63 (Minn. App. 1990), *rev. denied* (Minn. Apr. 13, 1990). "[O]n appeal from a default judgment, a party in default may not deny facts alleged in the complaint when such facts were not put

into issue below. By the same token, a party in default may not *assert* facts on appeal which were not asserted below." *Id.* at 363 (citations omitted).

There are three appropriate issues for review on appeal directly from a default judgment: "whether the evidence supports the district court's findings of fact," "whether those findings of fact support the conclusions of law and the judgment," and "substantive questions of law that were properly raised during trial." *Michaels v. First USA Title, LLC*, 844 N.W.2d 528, 532 (Minn. App. 2014) (quotation omitted); *see also Dollerson v. Maplewood Auto Mall/Cooper Motors, LLC*, No. A23-0870, 2024 WL 1848069, at *2 (Minn. App. Apr. 29, 2024) ("Because the district court did not consider the merits of [appellant's] claims when determining whether to dismiss them by default judgment, they are not properly before this court."). Appellate courts review a default judgment "on the record as it existed when the district court made its decision." *Scroggins v. Solchaga*, 552 N.W.2d 248, 253 (Minn. App. 1996), *rev. denied* (Minn. Oct. 29, 1996). In sum, appellants' challenge to the default judgment is not forfeited, but their arguments are limited.

**B.     The entry of default judgment was not an abuse of discretion.**

Turning to the merits of the question whether the district court abused its discretion by granting default judgment, we must first identify the test that applies to evaluate the exercise of the district court's discretion. Appellants argue that this case is governed by *Frontier*, and that the district court abused its discretion by failing to consider the factors outlined in that case. In *Frontier*, we affirmed the grant of default judgment as a sanction under Minnesota Rule of Civil Procedure 37.02 on the basis of willful, persistent, and

11

unjustifiable failure to comply with discovery orders. 788 N.W.2d at 925. In our analysis, we recognized five factors that courts examine in evaluating whether the district court abused its discretion in imposing discovery sanctions. *Id.* at 923.

Respondents argue that *Frontier* does not apply because this case is not a discovery-sanctions case. Instead, they argue, we should evaluate the grant of default judgment under the four-factor test from *Finden v. Klaas*, 128 N.W.2d 748 (Minn. 1964). In *Finden*, the supreme court evaluated whether the district court abused its discretion by denying a rule 60.02 motion to vacate a default judgment entered against a defendant who failed to answer a complaint. 128 N.W.2d at 750. The supreme court identified four factors that must be met to vacate the default judgment. *Id.*; *see also Gams v. Houghton*, 884 N.W.2d 611, 619-20 (Minn. 2016) (applying *Finden* factors to denial of relief under rule 60.02 for default judgment entered pursuant to Minnesota Rule of Civil Procedure 5.04). And, as respondents observe, in *Black v. Rimmer*, we applied the *Finden* factors in reviewing both the district court's denial of a rule 60.02 motion to vacate a default judgment and its decision to grant default judgment under Minnesota Rule of Civil Procedure 55.01 for "fail[ing]to plead or otherwise defend" within the time allowed by statute or the rules of civil procedure. 700 N.W.2d 521, 525-26 (Minn. App. 2005) (quoting Minn. R. Civ. P. 55.01), *rev. dismissed* (Minn. Sept. 28, 2005).

Here, the district court relied on Minnesota Rule of Civil Procedure 16.06 as its authority to impose the sanction of default judgment. Rule 16.06 allows a district court to impose sanctions against a party who "fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference." Minn. R.

12

Civ. P. 16.06. Rule 16.06 states that such sanctions may include the orders authorized in rule 37.02(b)(2), (3), or (4). Under these provisions of rule 37.02, the district court may preclude the disobedient party from supporting or defending against claims, prohibit the introduction of evidence, dismiss the action, or render a default judgment against the disobedient party. Minn. R. Civ. P. 37.02(b)(2), (3). Although *Frontier* involved sanctions for the violation of discovery orders under rule 37.02, we conclude that sanctions for the violation of scheduling or pretrial orders under rule 16.06 should be governed by the analysis in *Frontier*.

The following factors are relevant under *Frontier*:

> (1) if the court set a date certain by which compliance was required, (2) if the court gave a warning of potential sanctions for non-compliance, (3) if the failure to cooperate with discovery was an isolated event or part of a pattern, (4) if the failure to comply was willful or without justification, and (5) if the moving party has demonstrated prejudice.

788 N.W.2d at 923.

The district court here cited *Frontier* when describing the default-judgment standard. But appellants suggest that the district court did not make adequate findings regarding the *Frontier* factors. It is true that the district court did not specifically identify the *Frontier* factors in its findings. Nevertheless, the district court made the following findings that substantively address the factors. First, the district court set a date certain by which compliance was required. The pretrial order required the parties to submit their pretrial materials, including exhibit lists, witness lists, motions in limine, jury instructions, and a proposed special-verdict form by October 28, 2024. The pretrial order also set a

13

pretrial-hearing date, which was then extended to January 9 upon the parties' stipulated request, and that date was communicated to appellants. Second, a warning of potential sanctions for noncompliance was given in boldface type in the pretrial order, which stated that "[f]ailure to comply with this order may subject parties to sanctions including, but not limited to . . . a judgment by default against the noncompliant party." Third, appellants repeatedly "disregard[ed] . . . their obligations in this case." They failed to comply with their discovery obligations earlier in the case, failed to submit their mandatory pretrial materials, and failed to attend the pretrial hearing despite having obtained an extension of the hearing date. Fourth, appellants' "repeated noncompliance, even after prior sanctions, demonstrate[d] a pattern of willful and bad-faith conduct." Fifth, appellants' lack of pretrial submissions prevented respondents from being able to prepare for trial, "including the ability to anticipate and respond to [appellants'] potential evidence and witnesses." The district court also noted that respondents had "fully complied with all pretrial requirements" and had incurred "significant personal and financial expense" in traveling from Germany for the pretrial hearing and trial.

The district court decided that default judgment was the appropriate sanction under the circumstances. It reasoned that default judgment "serves not only to remedy prejudice and enforce compliance with court orders but also to deter similar misconduct." It also observed that, "because [appellants'] noncompliance foreclosed their ability to present any meaningful defense at trial, the outcome of the trial was preordained, and default judgment avoids further unnecessary expenditure of judicial resources—expenditures that would only adversely affect [respondents] given the circumstances."

14

Appellants challenge some of the district court's factual findings as erroneous. They assert that they were not aware of the deadlines or the potential for sanctions for failure to comply and that they did not engage in any pattern of willful noncompliance. But the district court's findings are supported by the record. On October 25—three days before the pretrial submissions were due under the pretrial order—Dolezal wrote respondents' counsel about the October 28 deadline, asking for confirmation of her assumption that the deadline would move closer to the trial date. Dolezal did not receive confirmation of her assumption, and she still did not address the pretrial-submissions requirement even after respondents filed their submissions on the due date. Appellants also received notice of the January 9 pretrial hearing, as well as notice of the other motions to be heard on that date. And appellants knew that the district court denied their request to continue the trial, which was scheduled to start on January 13, yet appellants still did not appear for the January 9 pretrial hearing. In addition, as the district court found earlier in the case, appellants failed to timely comply with their discovery obligations.

Appellants also argue that default judgment was too severe a sanction and that the district court instead should have continued the trial and imposed some "less severe sanction" such as an award of attorney fees. But we discern no abuse of discretion in the district court's decision. This case commenced in December 2022. After several continuances, the trial was scheduled for January 13, 2025. The district court denied appellants' request to continue the trial. At the time that appellants failed to appear for the pretrial hearing, trial was to begin in four days, they had been without counsel for five months, the corporation could not be represented at trial by a non-attorney, appellants had

15

made no pretrial submissions, and, as the district court explained, their "noncompliance foreclosed their ability to present any meaningful defense at trial." In these circumstances, granting default judgment was within the district court's discretion.

## II. The district court did not abuse its discretion by denying appellants' rule 60.02(a) motion to vacate the default judgment.

Appellants next argue that the district court abused its discretion by denying their motion to vacate the default judgment because the district court did not properly consider the *Finden* factors. A district court may vacate a judgment based on "[m]istake, inadvertence, surprise, or excusable neglect." Minn. R. Civ. P. 60.02(a). "The decision whether to grant rule 60.02 relief is based on all the surrounding facts of each specific case, and is committed to the sound discretion of the district court. As such, a district court will not be reversed on appeal except for a clear abuse of discretion." *Gams*, 884 N.W.2d at 620 (citations and quotation omitted). A district court abuses its discretion if its ruling relies on a "misapprehension of law" or if "its factual findings are clearly erroneous." *Id.* (quotations omitted).

A party moving for relief under rule 60.02(a) has the burden to establish the *Finden* factors. *Id.* "Although some showings may be stronger than others, the moving party must establish all four requirements for relief to be warranted." *Cole v. Wutzke*, 884 N.W.2d 634, 637 (Minn. 2016) (citation omitted). The four factors are (1) the moving party has "a reasonable defense on the merits,"[3] (2) the moving party has a "reasonable excuse" for

---

[3] The existence of a "debatably meritorious claim" satisfies the "reasonable defense on the merits" factor. *Charson v. Temple Israel*, 419 N.W.2d 488 (Minn. 1988).

their failure or neglect to act, (3) the moving party "acted with due diligence after learning of the error or omission," and (4) "no substantial prejudice will result to the other party." *Id.* (quotations omitted).

In its order denying appellants' motion to vacate, the district court analyzed each of the *Finden* factors and determined that appellants had not established any. Because all factors must be satisfied to warrant relief and because we conclude that the district court did not err in determining that appellants failed to establish the second factor—a reasonable excuse for their neglect to act—our analysis begins and ends with that factor.

"Neglect of the party itself which leads to entry of a default judgment is inexcusable, and such neglect is a proper ground for refusing to reopen a judgment." *Black*, 700 N.W.2d at 527 (quotation omitted). Mistakes of law or fact may constitute reasonable excuse and "case law generally reflects a strong policy favoring the granting of relief when judgment is entered through no fault of the client." *Cole*, 884 N.W.2d at 638 (quotation omitted). But "not all mistakes, whether of fact or of law, and whether committed by a party to an action or by his attorney, are subject to relief." *Id.* (quotation omitted). The right to vacation of a judgment is "not absolute" and "it is generally for the district court to determine whether the excuse offered by the movant is true and reasonable under the circumstances." *Id.* at 638-39 (quotation omitted).

In its order, the district court recited appellants' arguments why they had a reasonable excuse for their neglect:

> These include that Dolezal was ignorant of the law, that Dolezal made "fervent efforts" to secure counsel that [respondents'] counsel allegedly personally thwarted, that

17

there was confusion around the trial order (or lack thereof), that she believed the pre-trial deadlines had been moved, and that a court clerk mistakenly told her there were no upcoming deadlines.

The district court rejected the arguments. It determined that "Dolezal's own correspondence acknowledged that she was aware of the looming pretrial deadlines," citing Dolezal's October 25 letter to counsel asking to confirm her assumption that the October 28 deadline would move and the fact that she did not receive that confirmation. The district court also cited appellants' failure to appear at the January 9 pretrial hearing and the hearing on respondents' motion for a default judgment and their motions in limine, which were also noticed for January 9 at 9:00 a.m. The district court noted that Dolezal offered excuses for her failure to appear—that there were a lot of documents in the case, that she was unrepresented, and that the default hearing had been briefly set for a different day—but it decided that it was "not satisfied by any of these asserted justifications" and that Dolezal had "failed to establish a reasonable excuse to fail to appear."

Appellants argue that "the district court failed to properly consider [appellants'] pro se status in determining that she lacked a reasonable excuse or made an honest mistake" regarding the pretrial deadlines and the pretrial hearing. She asserts that she presented evidence of multiple unexpected withdrawals of counsel, her diligence in seeking new representation, her contact with the district court and the assurance she received that there "was nothing in this case until December of 2024," her communication with respondents' counsel about her belief that the October 28 deadline would change, and her belief—laid

18

out in an affidavit that accompanied her motion to vacate—that the pretrial hearing was set for 1:00 p.m. on January 9.

We are not persuaded that the district court erred. "Although some accommodations may be made for pro se litigants," we have "repeatedly emphasized that pro se litigants are generally held to the same standard as attorneys and must comply with court rules." *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001). While appellants' pro se status is relevant, it does not itself excuse appellants' failure to communicate, meet deadlines, or attend the pretrial hearing. And the record supports the district court's determination that appellants lacked a reasonable excuse for failing to meet their pretrial obligations or attend the pretrial hearing. The pretrial order set an October 28 deadline for pretrial submissions. Appellants' assumption that the deadline would change—an assumption for which they did not receive confirmation—does not mandate a finding of a reasonable excuse for not filing any pretrial submissions (by the deadline or any time thereafter). In December, Dolezal knew that the trial was coming up in January, as demonstrated in her affidavit supporting her request for a continuance, and she sought a continuance of the trial and the "pre-trial orders." Appellants had received notice of the January 9 pretrial hearing, as well as notice of motions scheduled for January 9 that both stated a 9:00 a.m. start time. Although appellants' request for a continuance was denied, appellants still did not appear on that date. On this record, we see no error in the district court's determination that appellants failed to show a reasonable excuse for not complying with pretrial deadlines or appearing at the pretrial hearing.

In sum, even considering the fact that appellants were unrepresented starting in September 2024, we see no error in the district court's determination that they lacked a reasonable excuse for their failures to act. Because appellants did not meet their burden to establish all four *Finden* factors, the district court did not abuse its discretion by denying their rule 60.02 motion to vacate the default judgment.

**Affirmed.**